IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Softech Worldwide, LLC,      )
                             )
     Plaintiff,              )
                             )
          v.                 )
                             )     1:10cv651 (JCC)
Internet Technology          )
Broadcasting Corp., et al.,  )
                             )
     Defendants.             )


**M E M O R A N D U M    O P I N I O N**

This matter is before the Court on defendant Internet
Technology Broadcasting Corp., et al.'s ("Defendant" or "ITBC")
Motion to Dismiss plaintiff Softech Worldwide, LLC's
("Plaintiff" or "Softech") complaint for failure to state a
claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or,
in the alternative, to transfer venue to the United States
District Court for the Middle District of Florida.  For the
following reasons, the Court will deny Defendants' Motion to
Dismiss and will provisionally deny Defendants' Motion to
Transfer Venue.

## I. Background

According to its Complaint, Plaintiff is a Virginia-
based software development company specializing in the creation
of software permitting video transmission via the Internet.

(Compl. ¶¶ 1, 7.)  Plaintiff alleges that it "developed, owns,

refines, and maintains the following software programs": CDN,

CDN.NET, EDR, LC, LMS, VSAT, DMA (collectively the "Software").

(Compl. ¶ 8.)  These programs are the subject of pending

copyright applications filed on Jun 9, 2010, and are attached to

the Complaint as Exhibits 1-8.  (Compl. ¶¶ 9-16.)

Of particular significance in the instant case is the

DMA software which, combined with the rest of the Softech

Software, may be implemented through a DMA Software interface,

("DMA Interface") allowing a user to scale delivery of

electronic media to users via varied devices (e.g., television

monitors, desktop computer monitors, and mobile devices).

(Compl. ¶¶ 15-16.)  Plaintiff alleges that the Softech Software

and DMA Interface are based on Softech's proprietary information

("Proprietary Information"), including proprietary development

techniques and activities, source code, and elements of design.

(Compl. ¶ 17.)

Defendant Internet Technology Broadcasting Corporation

("ITBC"), a Delaware corporation with its principal place of

business in Orlando, Florida, offers technology consulting and

staffing services including distance learning utilizing content

delivery and internet protocol video.  (Compl. ¶¶ 2, 20.)

In 2002, ITBC allegedly sought the assistance of

Softech in developing software for the United States Department

of Veterans Affairs (the "VA"). (Compl. ¶ 21.) From 2002 until early 2010, ITBC allegedly requested that Softech supply ITBC with software to assist ITBC in providing services, specifically software development, updates, revisions, maintenance, and other technical services on an ongoing basis. (Compl. ¶¶ 22-23.)

On or about November 2009, ITBC offered to Softech and Softech accepted a Technical Services project (the "DMA Pilot Project") that utilized Softech Software and the DMA Interface and required escalation of existing Technical Services routinely provided by Softech. (Compl. ¶ 25.) Ann Howard, President of ITBC, orally approved the DMA Development Plan contemporaneously with its November 24, 2009 tendering. (Compl. ¶ 27.)

Softech began performance of the DMA Pilot Project. (Compl. ¶ 29.) This required Softech to hire additional staff, with 6 months of technical services costing $1,329,660.00, and 10 months costing $2,216,100.00. (Compl. ¶ 28.) Softech began hiring additional staff, with ITBC's direct knowledge, in December 2009 and January 2010. (Compl. ¶ 31.)

Softech provided technical services to ITBC from December 2009 to April 30, 2010. (Compl. ¶ 31.) Softech issued an invoice to ITBC on January 31, 2010, for Technical Services generally and for services relating to the DMA Pilot Project. (Compl. ¶ 32.) ITBC did not pay the invoice until March 22, 2010. (Compl. ¶ 33.) Softech issued other invoices in

February, March, and April, each for $248,170.00. (Compl. ¶ 36.) None of these invoices were paid. (Compl. ¶ 40.)

Wanting to evaluate the progress of the DMA Pilot Project, ITBC requested copies of the source code and other allegedly proprietary information from Softech. (Compl. ¶ 34.) These materials have not been returned to Softech, nor has their confidentiality been guaranteed. (Compl. ¶ 35.) ITBC orally requested termination of all relations with Softech on April 28, 2010. (Compl. ¶ 39.) Softech requested reconsideration, but ITBC orally reaffirmed its termination with a request for a full and final invoice from Softech. (Compl. ¶ 41.) Following this, Softech ceased technical communications with ITBC and disabled file transfer accounts used by Softech to maintain versions of its software for ITBC and for the VA. (Compl. ¶ 42.)

During Softech's work for ITBC, ITBC gained access to and copies of the Softech software and DMA Interface, including updates and revisions published from February through April 2010. (Compl. ¶ 38.) Softech's software is still utilized, maintained, and updated by ITBC and by the VA through ITBC. (Compl. ¶ 45.) ITBC is actively seeking to hire software developers. (Compl. ¶ 43.) ITBC represents that it owns, developed, or sponsored some or all of the Softech Software.

(Compl. ¶ 46.)  ITBC also takes active measures to restrict the
Softech's visibility behind ITBC's services.  (Compl. ¶ 47.)

Softech filed a seven-count complaint [Dkt. 1] (the
"Complaint") on June 10, 2010, with this Court.  Softech claims
two counts of copyright infringement and one count of unfair
competition, violation of Virginia's Consumer Protection Act,
violation of Virginia's Uniform Trade Secrets Act, breach of
contract, and unjust enrichment.  Softech seeks (1) a
declaration that it is the owner of its software and the DMA
Interface, and that it has the right to sue and collect damages
for any infringements thereof; (2) an injunction against
Defendants from infringing upon Softech's copyrights; (3) a
declaration that ITBC has unfairly competed with Softech in
violation of federal law; (4) an injunction against ITBC
preventing it from using Softech's software; (5) disgorging of
ITBC profits to Softech, with treble damages plus interest and
costs added; (6) statutory damages; (7) reasonable attorneys
fees and costs; (8) that all infringing materials be delivered
and destroyed at the cost of the Defendants; and (9) any further
relief the Court believes warranted.  (Compl. ¶¶ A-I.)

A related lawsuit is currently being litigated in
Florida State Court.  (MTD at 1 [Dkt. 6], Ex. B.)  On May 17,
2010, ITBC sued Softech in Florida State court claiming breach

of contract, theft of trade secrets, replevin, and seeking
injunctive relief.  (*Id.*)

Defendants moved to dismiss or transfer the instant
case to the Middle District of Florida on July 8, 2010. [Dkt. 5,
6.] Plaintiff responded in opposition on July 21, 2010.  [Dkt.
11.]  Defendants submitted a Reply in Support of their Motion on
July 26, 2010.  [Dkt. 13.]  Defendants' Motion to Dismiss, or,
in the Alternative, to Transfer Venue ("MTD"), is currently
before the Court.

## II. Standard of Review

### A.    Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal
sufficiency of a complaint.  *See Randall v. United States*, 30
F.3d 518, 522 (4th Cir. 1994).  In deciding such a motion, a
court must first be mindful of the liberal pleading standards
under Rule 8, which require only "a short and plain statement of
the claim showing that the pleader is entitled to relief."  Fed.
R. Civ. P. 8.  A court must take "the material allegations of
the complaint" as admitted and liberally construe the complaint
in favor of a plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411,
421 (1969).

While Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions" because "a formulaic recitation of the elements

of a cause of action will not do." *Bell Atlantic Corp. v.
Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).
Indeed, the legal framework of the complaint must be supported
by factual allegations that "raise a right to relief above the
speculative level." *Id.* at 1965.  In its recent decision,
*Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court
expanded upon *Twombly* by articulating a two-pronged analytical
approach to be followed in any Rule 12(b)(6) test.  First, a
court must identify and reject legal conclusions unsupported by
factual allegations because they are not entitled to the
presumption of truth.  *Id.* at 1951.  "[B]are assertions" that
amount to nothing more than a "formulaic recitation of the
elements" do not suffice.  *Id.*  (citations omitted).  Second,
assuming the veracity of "well-pleaded factual allegations," a
court must conduct a "context-specific" analysis drawing on "its
judicial experience and common sense" and determine whether the
factual allegations "plausibly suggest an entitlement to
relief."  *Id.* at 1950-51.  The plausibility standard requires
more than a showing of "a sheer possibility that a defendant has
acted unlawfully".  *Id.* at 1949.  In other words, "[a] claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Id.*

## B.    Motion to Transfer

Section 1404(a) addresses motions to transfer venue. With respect to transfer, the relevant portion of the statute instructs that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).  This rather ambiguous standard has been interpreted to require consideration of the following four factors: (1) the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience to the parties; and (4) interests of justice.  *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62 (E.D. Va. 1988).  The interest of justice factors include the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment.  *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).  In applying these factors, a Court must remember that the plaintiff's choice of forum is entitled to substantial weight, and should be abandoned only if the defendant can show that it is clearly outweighed by other factors.  *Id.*

**III. Analysis**

Plaintiff filed a seven-count Complaint alleging copyright infringement, misappropriation of trade secrets, breach of contract, and unjust enrichment. Defendants moved to dismiss or, in the alternative, to transfer venue to the Middle District of Florida. The Court will address Defendants' arguments for dismissal and transfer in turn.

**A. Motion to Dismiss**

1. Duplicative State Proceedings

Defendants claim that Plaintiff's lawsuit is so duplicative of the concurrent Florida Suit as to warrant dismissal by this Court. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citation and internal quotation marks omitted). Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given them. *Id.* Yet *Colorado River* lists certain exceptional circumstances for which it may be appropriate for federal courts to dismiss claims that are sufficiently duplicative of concurrent state claims.

That list includes: (1) whether the litigation involves property the state court is already exercising

jurisdiction over (to avoid inconsistent dispositions of property), (2) whether the federal forum is inconvenient, (3) whether failure to abstain would result in piecemeal litigation, (4) the order in which the courts obtained jurisdiction, (5) whether state or federal law resolves the claims, and (6) the adequacy of the state proceedings to protect the parties' rights. *Vulcan Chem. Tech. V. Barker*, 297 F.3d 332, 341 (4th Cir. 2002). "At bottom, abstention should be the exception, not the rule, and it may be granted only when the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Id.* (citation and internal quotation marks omitted) (emphasis added). A "complete" resolution, of course, is only possible where the state and federal suits are truly duplicative. *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 931 (4th Cir. 1992).

The Court finds this case to call for the rule, not the exception. While there may be some overlap between the instant case and the Florida case, the two are not entirely duplicative because, as Defendants acknowledge, the Florida suit does not contain the copyright claims. (MTD at 6; MTD Ex. B) The Florida suit therefore cannot yield a "complete" resolution of the issues at stake in this case, as required by *Vulcan*

*Chemical*.  Having considered the *Colorado River* factors for

dismissal, none compels a different result.

The Court therefore will not dismiss on this ground.

### 2. Personal Jurisdiction

Defendants claim that Plaintiff fails to state a

basis for this Court's personal jurisdiction over them.  Their

claim fails because Plaintiff's Complaint shows Defendants to

have availed themselves of the privilege of conducting

activities in Virginia, thereby establishing minimum contacts in

the Commonwealth, when it engaged Plaintiff--a Virginia-based

company--to develop software.  (Compl ¶¶ 1, 21, 22, 25.)  *See*

*also Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S.

102, 119-10 (1987) (the constitutional test for personal

jurisdiction asks whether defendant, *by its own act*, established

"minimum contacts" in the forum state by availing itself of the

privilege of conducting activities within that state).

The Court will therefore not dismiss on this ground.

### 3. Complexity

Defendants argue that because each count of the

Complaint incorporates by reference all of the other counts

except Count VI, Plaintiff violates Federal Rule of Civil

Procure 8(a), which requires "a short and plain statement of the

grounds for the court's jurisdiction.  (MTD at 12, 13.)  Motions

to dismiss for violating this rule "are not favored."  *Kamen*

*Soap Prods. Co. v. Struthers Wells Corp.*, 159 F. Supp. 706, 713

(S.D.N.Y. 1958).  They are only granted where prejudice to the

moving party is shown, *id.*, typically in egregious cases.  *See,*

*e.g.*, *Jacobson v. Schwarzenegger*, 226 F.R.D. 395 (C.D. Cal.

2005) (dismissing, with leave to amend, a two-hundred page civil

rights complaint that consisted of a rambling diatribe).

Plaintiff's eighteen-page Complaint creates no obvious prejudice

and does not egregiously violate the short-and-plain-statement

rule.  The Court therefore will not dismiss on this ground.

### 4. Factual Support

Defendants argue that each count of the Complaint

merely recites relevant statutory language without providing the

factual support required by *Twombly*.  (MTD at 13-14.)

Defendants provide the example of Plaintiff's copyright

infringement claim, claiming that Plaintiff failed to assert any

specific act of copyright infringement on any specific

copyright.  (MTD at 13.)

The Court disagrees.  Plaintiff alleges facts that, if

true, indicate a violation of the relevant laws.  Taking

Defendants' example regarding copyright infringement, to state a

claim for copyright infringement, a Plaintiff must allege both

(1) ownership of a valid copyright and (2) copying of the

original elements of the material by the defendant.  *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991);

12

17 U.S.C. § 501.  Plaintiff alleges ownership of specific

software copyrights (Compl. ¶¶ 8-16), termination of licenses to

use its software on a specific date (Compl. ¶ 39), and

subsequent use of that software (Compl. ¶¶ 45, 46, 47).

Plaintiff's allegations are therefore sufficient to support its

claim.

The Court therefore will not dismiss on this ground.

### 5. Copyright Claims

Plaintiff claims that Defendants are violating 17

U.S.C. § 501 by infringing on copyrights on Plaintiff's

software.  To state a claim for copyright infringement, a

Plaintiff must allege both (1) ownership of a valid copyright

and (2) copying of the original elements of the material by the

defendant.  *Feist,* 499 U.S at 361; 17 U.S.C. § 501.  Defendants

claim that Plaintiff is unqualified to claim copyright

infringement because the VA has unlimited rights to the software

at issue.

Regarding the first element of copyright infringement,

to show ownership of a valid copyright, a plaintiff must allege

ownership of something original and copyrightable.  *See Darden

v. Peters,* 488 F.3d 277, 285 (4th Cir. 2007) (internal quotation

marks omitted).  A work is original and copyrightable when it

has been "independently created by the author (as opposed to

copied from other works), and . . . possesses at least some

13

minimal degree of creativity." *Feist,* 499 U.S at 345.   "The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be." *Id.* (internal quotation marks omitted).

The Court finds Plaintiff's allegations sufficient to make the grade.  Plaintiff repeatedly alleges that it created the software at issue.  (Compl ¶¶ 8, 17, 29, 31, 37.)  And Plaintiff also claims ownership of that software.  (Compl ¶ 8 ("Softech developed, *owns*, refines, and maintains the following software programs . . . .") (emphasis added).)  Defendants may disagree and argue that in fact ITBC, or the VA, now owns the software.  But that does not affect whether Plaintiff's Complaint adequately states a claim and can survive a motion to dismiss.

The second element is met where a plaintiff alleges that a defendant has copied the plaintiff's original work.  *See Darden,* 488 F.3d at 285.  The Court finds that Plaintiff adequately does so here.  Plaintiff repeatedly alleges that Defendants essentially copied its work.  (Compl. ¶¶ 35, 37, 38, 45.)  Plaintiff's claim therefore meets the second element of copyright infringement.

The Court therefore will not dismiss on this ground.

### B.   Motion to Transfer Venue

As an alternative to dismissal, Defendants seek to
have this case transferred to the United States District Court
for the Middle District of Florida under 28 U.S.C. § 1404(a).
Section 1404(a) provides that a court may transfer a civil
action to another district where it might have been brought,
"for the convenience of the parties and witnesses [and] in the
interest of justice."  28 U.S.C. § 1404(a).  Specifically,
courts are to consider the following four factors:  (1) the
plaintiff's choice of venue; (2) witness convenience and access;
(3) the convenience of the parties; and (4) the interest of
justice.  *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor
Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62
(E.D. Va. 1988).  "When plaintiffs file suit in their home
forum, convenience to parties rarely, if ever, operates to
justify transfer."  *Baylor*, 702 F. Supp. at 1260.  The interest
of justice involves such circumstances as the pendency of a
related action, the court's familiarity with the applicable law,
docket conditions, access to premises that might have to be
viewed, the possibility of unfair trial, the ability to join
other parties, [and] the possibility of harassment.  *GTE
Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D.
Va. 1999)(citations and quotations omitted).

Defendants argue that transfer is appropriate because
the Florida suit was filed first, Plaintiff is allegedly

15

engaging in forum-shopping, most witnesses and evidence relevant to the case are located in Florida, Plaintiff already must travel to Florida to defend itself in the Florida suit, and no significant harm will ensue to Plaintiff from the transfer. (MTD at 15-20.) Plaintiff responds that a Plaintiff's choice of forum--particularly its home forum--is given great weight, the suit is no less connected to Virginia than any other state, likely witnesses are spread across the country and are not all located in Florida, Virginia is not an inconvenient state for Defendants to litigate in, and the Florida suit will likely be dismissed on preemption grounds. (Opp 9-12.)

Having considered the venue factors listed in *Baylor*, this Court finds that it lacks sufficient information to warrant transfer at this time. The Court will therefore provisionally deny Defendant's motion to transfer venue pending the conclusion of discovery, at which time the parties will be welcome to re-raise the issue.

## IV. Conclusion

For the reasons stated above, the Court will deny Defendants' Motion to Dismiss, and will provisionally deny Defendants' Motion to Transfer Venue.

|  | /s/ |
| --- | --- |
| August 23, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |